1          IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

2
_____

3
UNITED STATES OF AMERICA

4


5
          vs.          Criminal Action No. 02-22E

6
BILLIE SHOWERS

7
                    Defendant

8  _____


9
                PROCEEDINGS

10
          Transcript of SUPERVISED RELEASE REVOCATION HEARING

11  commencing on TUESDAY, OCTOBER 3, 2006, United States
    District Court, Erie, Pennsylvania, before Honorable MAURICE

12  B. COHILL, Senior U.S. District Judge.


13  APPEARANCES:


14  For the Government:   US Attorney's Office
                    By:  MARSHALL PICCININI, ESQ.

15                    Erie Federal Courthouse
                    Erie, Pennsylvania

16
    For the Defendant:    FEDERAL PUBLIC DEFENDER'S OFFICE

17                    By: THOMAS PATTON, ESQ.
                    Erie, Pennsylvania

18
                    Reported by:

19                    Patricia Sherman

Official Court Reporter
20          Room 5380 USPO & Courthouse
Pittsburgh, Pennsylvania 15219
21          (412) 281-6855

22
Proceedings recorded by mechanical stenography.  Transcript
23   produced by computer-aided transcription.

24

25

2

1

2
                    I N D E X
3

4
   Maggie Curtis          Page  13
5

6

7
                    * * * * *
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1           P R O C E E D I N G S

2           THE COURT:  Good afternoon.  Be seated, please.

3           MR. PICCININI:  Good afternoon, Your Honor.

4           THE COURT:  This is the time set for a supervised

5   release violation hearing with respect to Billie Showers.

6           We received letters from the probation office

7   alleging that Mr. Showers had violated the conditions of

8   supervised release.

9          What's his attitude toward those allegations,

10  Mr. Patton?

11         MR. PATTON:  Your Honor, I've discussed these

12  allegations in the petition with Mr. Showers.  We admit to

13  the allegations that are in the petition.

14         We would like to point out to Your Honor that the

15  last allegation in the petition is that Mr. Showers missed

16  two appointment dates at Gaudenzia Cross Roads for outpatient

17  drug treatment.  We're agreeing with that but also, I want to

18  make clear to Your Honor, Mr. Showers was attending

19  counseling there.  He was not removed from the program based

20  on missing these appointments.  So, he was attending the

21  outpatient drug treatment but he just missed those two days.

22         THE COURT:  Okay.  I don't think this says that he

23  did get kicked out of the program.

24         MR. PATTON:  That's correct, Your Honor.  I just

25  wanted to make that clear.

4

1      THE COURT:  Well, basically, the violations were

2  these, that he would refrain from the use of controlled

3  substances, unlawful use.

4      Since May 22 of '06 -- well, actually since his

5  release on June 14, 2005, he's tested positive for cocaine on

6  16 occasions.

7      Then he was also supposed to report to the

8  probation officer and submit truthful and complete written

9  reports within the first five days of each month and answer

10  truthfully all inquiries by the probation officer.

11  Apparently, he missed some of those appointed days, and also,

12  this is when he would sometimes show up and fail drug

13  testing.

14      Last was the reference to Gaudenzia Cross Roads

15  Treatment Program.  He failed to report to some of those.

16      I take it then he's admitting all those violations?

17      MR. PATTON:  That's correct, Your Honor.

18      THE COURT:  Well, according to the guidelines -- we

19  find that he has then violated those conditions of

20  supervision.  The guidelines are advisory only but we still

21  consult them for -- to help determine a reasonable and fair

22  sentence in these situations.

23        Additionally, we find that the appropriate criminal

24  history category is Roman numeral IV and the most serious

25  violation is a Grade C violation.  Here, the guidelines call

5

1  for, 7B1.3(c)(1) of the guidelines, where the term of

2  imprisonment determined under 7B1.4(a) is at least one month,

3  not more than six months, and then minimum term may be

4  satisfied by a sentence of imprisonment or (b), a sentence of

5  imprisonment that includes a term of supervised release with

6  the condition that substitutes community confinement or home

7  detention according to the schedule, Section 5C1.1(e), for

8  any portion of the minimum and the recommended guideline here

9  is six to 12 months of imprisonment.

10        So, with that, Mr. Patton, is there anything you

11  wish to say on behalf of your client?

12        MR. PATTON:  There is, Your Honor.  I wanted to

13  explain to you the situation Mr. Showers finds himself in and

14  how the sentence you impose upon him today is going to impact

15  that situation.

16      Prior to this petition actually being filed and

17  being acted upon, Mr. Showers had been ordered to appear over

18  in county court on a matter of child support.

19      In Erie County, if a person gets behind on their

20  child support payments, the Commonwealth of Pennsylvania can

21  file a petition asking that person be held in contempt of

22  court for failing to make their court ordered child support

23  payments.  If the Court finds that it is appropriate, they

24  can find the person in contempt of court and sentence them to

25  a term of imprisonment.  That happened with Mr. Showers.

6

1       Mr. Showers has six children that he's ordered to

2  pay child support on, and he got behind on the child support,

3  but actually had found a job.  Shortly before his contempt

4  hearing, his wages were being garnished.  Oddly enough, on

5  the day of his contempt hearing, the mothers of his children

6  actually received their first support check based on that

7  job, but Judge Trucilla found Mr. Showers in contempt and

8  placed him -- gave him a sentence, six months of

9  imprisonment, called a $2,000 purge amount.  Basically, if

10  Mr. Showers can pay $2,000 towards the balance of the child

11  support due, he would be released from jail.

12      The way things are set up, when someone gets put in

13  on these contempt sentences, they are allowed to get put in

14  Erie County Work Release Program so that they can work during

15  the day.  Obviously, the goal is to get them employed so that

16  they can get start making child support payments.

17  Mr. Showers did that.  Once he got put into Erie County, he

18  got over into the work release program which is they are

19  housed separately than at the Erie County Prison.  He got his

20  job back.

21      THE COURT:  How long ago did all this happen?

22      MR. PATTON:  August 7 or September 7 is when he got

23  put in.

24      But then after Mr. Showers got put over in the work

25  release, he got his job back that he had been working at, the

7

1  work release got notified that this petition had been filed

2  against -- the federal petition had been filed against

3  Mr. Showers and that Mr. Showers had this revocation hearing

4  set and was pending against him.

5      According to their standard rules of procedure,

6  once it got found out that he had a petition pending against

7  him, even though the federal probation never filed a

8  detainer, formal detainer, once work release found out that

9  this hearing was pending, he was removed from that program.

10      Mr. Conley from my office talked with Dennis Cowan

11  who actually runs the work release program and confirmed that

12  Mr. Showers was removed from the work release program because

13  of the pendency of this hearing.  They view anybody who has a

14  pending hearing on any unrelated cases as that adding a

15  flight risk component.  So they don't want the person in work

16  release.

17      Mr. Cowan also confirmed if Your Honor impose a

18  sentence of incarceration on Mr. Showers' case and makes it

19  consecutive to the sentence Judge Trucilla entered on the

20  contempt, of course, a detainer would then be placed on

21  Mr. Showers with Erie County telling Erie County, you know,

22  not to release Mr. Showers because the marshals would come

23  and get him.  If that happens, Mr. Showers will not be

24  allowed to go back into the work release program because

25  you're not allowed to be in the work release program when you

8

1  have a detainer on you.

2       So, you're going to end up with a situation that if

3  he gets consecutive time here, you're going to turn the six-

4  month contempt sentence that was entered against him into a

5  true six-month sentence. He's going to be sitting at Erie

6  County doing time, not working, not making any child support

7  payments.

8       Now, normally, when a defendant makes an argument

9  for a sentence that is concurrent with another sentence he is

10  serving, there is the argument to be made that, well, Judge

11  if you make the federal time concurrent with the state time,

12  there is no incremental punishment that, you know, the

13  defendant is getting a free walk.

14       But I would suggest to you in this case that the

15  six-month contempt sentence that is imposed upon Mr. Showers

16  was not imposed upon him so much to punish him for not paying

17   child support.  The theory behind that sentence of

18   imprisonment is get him in where -- get into the work release

19   program, and they will have to get a job, and they can start

20   making payments because everybody agrees what they want is

21   Mr. Showers working so that he can make child support

22   payments to support his children.  That's really the reason

23   he was incarcerated on the child support.

24        Mr. Showers did exactly that.  He got himself into

25   the work release program and got himself working so that he

9

1   could make child support payments.

2        Now, the guidelines in this case recommend to you a

3   sentence of six to 12 months of imprisonment.  As you noted

4   when you looked at the nature of the violations in this case,

5   they are what I refer to as technical violations, not

6   committing a new crime, but violating the conditions you

7   imposed upon him.  So, while it is always serious when a

8   defendant does not comply with the conditions you place upon

9   him, there are varying degrees of seriousness when it comes

10   to violation of supervised release.

11        I would suggest to you that the violations in

12   Mr. Showers' case are closer to the mitigating end of that

13   range than to the aggravated end of that range.

14        I would submit to you that imposing a sentence of

15   imprisonment on Mr. Showers that is concurrent with the

16   six-month contempt sentence punishes him for non-complying

17   with the terms of his supervised release, allows him to get

18   back into the work release program.  While he's still in

19   prison, he can come back.  He can only leave to go to work.

20   They will also allow him to leave to do drug treatment, if

21   they believe that is called for.  There's also inside drug

22   testing as part of the work release program to make sure he's

23   not using controlled substances while he's out of the

24   institution working, but he's got to be there at night,

25   locked up at night.  So, it is, it is imprisonment.

                              10

1        I would submit to you that under, I think, what is

2   a unique situation of this case that is appropriate because,

3   otherwise, what you're going to do is, in addition to the six

4   months he got from Judge Trucilla, just a flat six-month

5   sentence where the purge amount is meaningless because there

6   is no way he can meet the purge amount.  He can't pay child

7   support.  That was not the intent of Judge Trucilla when he

8   imposed the contempt proceedings.  Certainly, there is an

9   aspect when you're finding somebody in contempt of saying,

10   you didn't comply with my order, so I'm punishing you, but

11   the whole system is set up to get the person working.

12   Mr. Showers won't be able to do that if you impose your

13   sentence to run consecutively to his contempt sentence.  If

14   you don't say anything, if you just don't say concurrent or

15   consecutive, by matter of law, under federal law, it

16   automatically is considered consecutive.  A detainer will be

17   put on Mr. Showers.

18        So, I would ask you to consider those factors when

19   you're trying to decide what is the proper resolution in this

20   case, what's the proper punishment for Mr. Showers here for

21   not complying with the conditions you placed upon him.

22        Mr. Showers does wish to make a statement to Your

23   Honor.  I believe Ms. Maggie Curtis, who is Mr. Showers' girl

24   friend and also mother of three of his children, is here.

25   She would like to make a statement to Your Honor.

11

1        THE COURT:  Mr. Showers.

2        THE DEFENDANT:  I'm here today to, basically, to

3  say I'm sorry, basically, to the Court and all the people

4  around me that are trying to support me.  I've had situations

5  over the year, this year and a half that I come home to that

6  I -- that have me do something.  When I came home, I had a

7  great attitude, Mr. Cohill.  I had a good attitude, you know,

8  about things.  And all of a sudden, it just, during my course

9  -- the course of the year, me being out, it was just some

10  things like snowballed basically.

11        I'm not making excuses for what I've done and stuff

12  like that.  It's just that I cope with things different than

13  other people might cope with things, you know, but you know,

14  I just want to say that I didn't hurt anybody.  I'm sorry

15  that I did, you know, go against what you guys had me do.

16  It's just been -- it's been a rough year.  A lot of things

17  happened to me and a lot of death to my family.  All kind of

18  things.  I'm not making an excuse. It's just that I cope with

19  things different than other people.  Some people just run

20  exercise when things ain't going right. I shouldn't have been

21  doing this but I did it so I could, basically, you know, I

22  know it's wrong, but I can't get myself out of doing

23  something really, really, basically, off the wall, you know.

24  So, I did this and basically, girl friend didn't even know

25  what was going on until basically, you know, I had to tell

12

1  her after Dave had made a phone call, I had to tell her that,

2  basically, what was going on, and why, you know.  It was a

3  situation and I was embarrassed to tell her that I -- that I

4  had a problem that had just gotten out of hand for a little

5  while.

6       I'm here just to -- I just want to, basically, just

7  take care of my family, my children.  That's all I want to do

8  is take care of my children and help, you know, take care --

9  help take care of Maggie. She's here to speak to you on my

10  behalf.

11       During my sentence, when you sentenced me before, I

12  didn't have anybody here for me.  At that time I didn't want

13  anybody for me.  I just wanted to face the music and I do my

14  three years.  When I asked for treatment, I know myself a

15  little bit better than the next man.  So, I would ask for

16  treatment programs in there, and I wasn't able to get those

17  because I had pending charges from other strikes.  So, I

18  called for help, and you know, I know that I have a situation

19  that I have to deal with.  But eventually, it will get to a

20  situation, enough pressure, I crack under pressure, you know.

21  I'm just asking -- I'm just asking if the Court will have

22  some compassion for me as far as the sentence.

23          I thank you very much.

24          THE COURT:  Thank you.

25          Mr. Patton, you want to call a witness?


                                13


1          MR. PATTON: I would like to clarify Mr. Showers

2   said he said he asked for help while he was in there.

3          When he was in the Bureau of Prisons, he asked to

4   get in the comprehensive drug treatment program, but he was

5   not able to get into the program because he had a detainer on

6  him or on some state charges out of the State of Indiana once

7  he finished.  So, he didn't get into that program.

8      He also wasn't -- didn't get any halfway house time

9  because if you have a pending, if you have detainers on you,

10  you don't get the halfway house time.  He was taken out to

11  Indiana.  Those charges were dismissed and then he was then

12  released here.  That was his reference to asking for

13  treatment while he was in referring to Bureau of Prisons.

14      Your Honor, if I can call Ms. Curtis to the witness

15  stand.

16      THE COURT: She can just stand right there.

17      MS. CURTIS: My name is Maggie Curtis. I have three

18  children with him.  I just want to say --

19      THE COURT: Give us your name.

20      MS. CURTIS: Maggie Curtis.

21      I have three children with Mr. Showers.  I'm just

22  basically here to let you know we've had a horrible year.

23  Since he got out in June, I was diagnosed with breast cancer,

24  and we have been going through that the last year.  That's

25  part of the problem he's going through.  He was helping me

14

1  and helping the kids.  I was going through chemo, radiation,

2  all this stuff, and he was helping me out with the kids.

3  Then when I started getting better, he finally was able to

4  get a job and I was starting to get my child support

5  payments.  Everything was going good.  Then he was pulled in

6  for not paying child support after, actually, after he had

7  started paying it.  Then he went into the work release

8  program. Everything got back.  He got that same job back.

9  Everything was going to go good and all of this came up.  It

10  would benefit me more for him to be working and be able to

11  help out me and my children financially and be there for us

12  emotionally also.  That's it.

13       THE COURT: Mr. Piccinini.

14       MR. PICCININI:  Your Honor, I've listened to what

15  the defense had to say with regard to Mr. Showers.  I looked

16  back to your original judgment and conviction order and what

17  you did and said on behalf of Mr. Showers.

18       You said that Mr. Showers has a bad prior record.

19  This is not surprising in view of his lack of family support

20  from the time he was born.  He states that he realizes this

21  is probably his final opportunity to get straightened out and

22  I believe him.

23        What happened to that?  What happened to the guy

24  that stood in front of you at sentencing almost four years

25  ago, or beyond four years ago, who promised you that if you

15

1  released him, this was his final opportunity, and you

2  believed him.  Basically, what happened is nothing.  He spent

3  three years in federal prison, spent all this time being

4  supervised here in Erie and completely failed.

5        I'm concerned that if a defendant were to receive

6  today a low level concurrent sentence, then we are very close

7  to Mr. Showers being out from under our control and back on

8  the streets, likely in a position to re-offend just like he

9  had previously.  It just doesn't make any sense to me.  The

10  defendant has been given the opportunity for rehabilitation.

11        He talks about Judge Trucilla's intentions and

12  requiring him to go into jail so that he is going to get a

13  job.  Guess what?  He was required to have a job for the last

14  couple of years while on supervised release.  Judge Trucilla

15  should never have been in the position to have to require him

16  to go into work release program of incarceration because as

17  part of his terms of supervise release, he should have been

18  working.  And what was he doing instead of working?  He was

19  obviously using the controlled substances that resulted in

20  the positive tests.  He was not reporting as was required,

21  not only to Mr. Conley, but also to the rehabilitation staff.

22  For the outpatient treatment counseling he wasn't showing up

23  for all those.

24        I don't buy this claim that puts blame on this

25  Court for having the consequence about the six months of

16

1  contempt that he has, I don't buy it.  If Judge Trucilla

2  thinks this is contrary to his intention, then his county

3  court attorney can go before Judge Trucilla and explain that

4  you sentenced him consecutively, and he can either remove the

5  purge or do something else.  I don't think you should be

6  bound by what the defense believes is Judge Trucilla's

7  intention.  The shame is that this man had to be sent to jail

8  to pay support while he's under this Court's supervision from

9  this period of time.  I believe he did serve a sentence

10  within the guideline range as calculated.  I believe that

11  sentence must run consecutively and I believe, although I'm

12  probably in the minority here, that we can't just allow him

13  to serve his time and be done because, otherwise, we failed

14  the system.  We, basically, allowed someone to go through

15  supervised -- go through three years supervised release, come

16  out, and be no better than he was when he was sent in there

17        In the first place, if we feel we don't have some

18  control over Mr. Showers, then I think we failed.  It may be

19  Mr. Showers is never going to listen to us, but we, at least

20  in the system, have to give him an opportunity.  I believe

21  that it requires time in jail.  Time needs to be consecutive

22  and he needs to be placed back on supervised release for as

23  much as another two years once he's released from prison.

24        Unfortunately, that requires the supervised release

25  officers have to deal with this non-compliant offender again,

17

1  but hopefully, Mr. Showers is listening.  And when he's done

2   serving his jail time, he'll finally get what you thought he

3   got several years ago, that this is his final opportunity to

4   get straightened out.  That is all I have.

5        THE COURT:  Thank you.

6        Mr. Condi, what is the situation?  What is the

7   situation on supervised release?

8        MR. CONDI: According to guideline calculations,

9   Mr. Showers could be placed back on supervised release for

10   anywhere between 24 and 36 months, if the Court wished to do

11   that.

12        THE COURT:  Regardless of a sentence of

13   imprisonment?

14        MR. CONDI: Regardless of the sentence of

15   imprisonment, correct.

16        MR. PICCININI:  Your Honor, in line with that, I

17   think the guideline is 24 to 36 months if you were to give

18   him -- you can't give him the entire three years.  You have

19   to subtract from the maximum three years the amount of time

20   that you gave him in jail.

21        THE COURT:  That's what I was not sure of.

22        MR. CONDI: That is correct, Your Honor.

23         MR. PATTON:  Your Honor, I apologize.  Mr. Showers,

24  for eight of the months that he was out on supervision, he

25  had custody of two -- he has three children with Ms. Curtis

18

1  and three other children with two other women.  So, for about

2  eight months of the time he was on supervision, he actually

3  had custody of two of the children and was receiving some

4  federal benefits to assist him because he had full-time

5  custody of the children.  So, that also impacted the ability

6  to be able to work with having full custody of the children.

7         THE COURT:  Okay.  Thanks, Mr. Patton.

8         Well, I'm inclined agree with Mr. Piccinini here.

9  You know, as he pointed out, you had me convinced the last

10  time around.  I'm disappointed about the way things have

11  turned out.  It sounds to me like you have a serious

12  addiction is the main thing here.  I don't think I'd want

13  children in the custody of someone who has a serious drug

14  addiction.  But anyway, I'm prepared to impose sentence at

15  this time.

16         Is there any reason, Mr. Patton, that sentence

17  should not be imposed at this time?

18      MR. PATTON:  No, sir.

19      THE COURT:  Mr. Showers, any reason sentence should

20  not be imposed at this time?

21      THE DEFENDANT:  No, sir.

22      THE COURT: Mr. Piccinini?

23      MR. PICCININI:  No, Your Honor.

24      THE COURT:  Pursuant to the Sentencing Reform Act

25  of 1984, it is the judgment of the Court that the defendant,

19

1  Billie Showers, is hereby committed to the custody of Bureau

2  of Prisons to be imprisoned for a term of 12 months to be

3  served consecutively to any other period of incarceration the

4  defendant is presently serving.

5      The defendant shall be placed on supervised release

6  for a period of two years on the same terms and conditions as

7  previously imposed.

8      I hope this time that things will go better than

9  they have before.

10          Mr. Showers, you have a right to appeal your

11   sentence.

12          You're entitled to have a lawyer at every stage,

13   and if you cannot afford an attorney, one will be provided

14   for you.

15          MR. PATTON:  If I could ask you to consider

16   imposing the sentence, if you impose a sentence of exactly 12

17   months, Mr. Showers will not be eligible to receive any good

18   conduct time while he's incarcerated.

19          THE COURT:  We'll make it 12 months and one day.

20          Mr. Showers -- I did talk about rights of appeal.

21          Court's adjourned.

22          I certify my original signature herein that the

23   foregoing is a correct transcript from the record of

24   proceedings in the above-entitled matter.

25   S\Patricia Sherman  November 21, 2006