IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.                         CRIMINAL NO. 01-22 ERIE

BILLIE SHOWERS


CHANGE OF PLEA



Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom A, U.S. Courthouse, Erie,

Pennsylvania, on Thursday, October 25, 2001.




APPEARANCES:
          MARSHALL J. PICCININI, Assistant United States
          Attorney, appearing on behalf of the Government.

          MICHAEL R. CAULEY, Esquire, appearing on behalf

of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1           P R O C E E D I N G S

2

3           (Whereupon, the Change of Plea proceedings began at

4   9:50 a.m., on Thursday, October 25, 2001, in Courtroom A.)

5

6           THE COURT:  Mr. Showers, I'm informed that you wish

7   to change the plea that you previously entered at Count One of

8   Indictment No. 01-22 Erie to a plea of guilty, is that correct,

9   sir?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Before accepting your guilty plea, there

12   are a number of questions that I'm going to ask you to make

13   certain that it is a valid plea.  If you don't understand any

14  question, please tell me and I will explain it to you.  If at

15  any time you wish to consult with Mr. Cauley, please tell me

16  that, I will give you the time to consult.  I give you these

17  instructions because it is essential to a valid plea that you

18  understand every question before answer it.  Would you please

19  administer the oath.

20          DEPUTY CLERK:  Please raise your right hand.

21          (Whereupon, the Defendant, BILLIE SHOWERS, was

22  sworn.)

23          THE COURT:  Do you understand, sir, that now that

24  you have been sworn, your answers to my questions are subject

25  to the penalties of perjury or of making a false statement if

3

1  you do not answer truthfully?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Would you please state your full name?

4          THE DEFENDANT:  Billie Showers.

5          THE COURT:  How old are you?

6          THE DEFENDANT:  Thirty-two.

7          THE COURT:  How far did you go in school?

8          THE DEFENDANT:  12th.

9          THE COURT:  You completed 12th grade?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  Are you able to communicate

12  in English?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Mr. Cauley, have you been able to

15  communicate with your client in English?

16          MR. CAULEY:  Quite well, your Honor, thank you.

17          THE COURT:  Mr. Showers, have you taken any drugs or

18  medication or have you drunk any alcoholic beverages in the

19  past 24 hours?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  Are you now or have you recently been

22  under the care of a physician or a psychiatrist?

23          THE DEFENDANT:  No, sir.

24          THE COURT:  Are you now or have you recently been

25  hospitalized or treated for any type of narcotic addiction?

4

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Do you understand what's happening here

3  today?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Does either counsel have any doubt about

6  the competence of Mr. Showers to plead guilty at this time to

7  the charge contained in the Indictment; Mr. Piccinini?

8          MR. PICCININI:  No, your Honor.

9          THE COURT:  Mr. Cauley?

10          MR. CAULEY:  No, sir.

11          THE COURT:  I find the defendant is competent to

12  plead.  Do you have an attorney with you here today?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  What's his name?

15          THE DEFENDANT:  Michael Cauley.

16          THE COURT:  Have you had a sufficient opportunity to

17  discuss your case with him?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  And are you satisfied with the work that

20  he has done for you?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Mr. Showers, do you understand that if

23  you continue to plead not guilty and do not change your plea,

24  you would have the right to be assisted by an attorney at the

25  trial of the charge against you?

5

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  Do you understand that if you did not

3  enter a guilty plea and that if you qualified financially, you

4  would be entitled to be assisted by an attorney at no cost to

5  you at every phase of the processing of the charge against you?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  Do you understand that if you did not

8  plead guilty and there were a trial, under the Constitution and

9  laws of the United States, you would be entitled to a speedy

10  trial by a judge and jury --

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  On the charge contained in the

13  Indictment?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Do you understand that if there were a

16  trial, you would be presumed to be innocent at the trial of the

17  charge against you?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Do you understand that if there were a

20   trial, the government would be required to prove your guilt by

21   competent evidence and beyond a reasonable doubt before you

22   could be found to be guilty?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Do you understand that if there were a

25   trial, you would not have to prove that you were innocent?


                                6


1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  And do you understand that if there were

3    a trial, the jury would have to be unanimous in order to find

4    you guilty of the charge?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Do you understand that if there were a

7    trial, you would have the right to participate in the selection

8    of the jury; that you would have the right to strike or

9    eliminate any prospective juror if it was demonstrated that the

10    juror would be unable to render a fair and impartial verdict;

11    and that you would have the right to strike or eliminate ten

12  jurors from the jury and one alternate juror, without giving

13  any reason at all for so doing?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Do you understand that if there were a

16  trial, the witnesses for the government would have to come to

17  court and they would have to testify in your presence?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  Do you understand that if there were a

20  trial, your counsel could cross-examine the witnesses for the

21  government, object to evidence offered by the government and

22  then offer evidence on your behalf?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  Do you understand that if there were a

25  trial, the government would be required to pay witness fees to


                                7


1  witnesses you wished to call on your behalf if you qualified as

2  being financially unable to pay those fees?

3        THE DEFENDANT:  Yes, sir.

4        THE COURT:  Do you understand that if there were a

5  trial, you would have the right to testify if you chose to

6   testify?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Do you understand that if there were a

9   trial, you would have the right not to testify and that no

10  inference or suggestion of guilt could be drawn from the fact

11  that you did not testify?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  If you plead guilty today and I accept

14  your plea, do you understand that you will waive your right to

15  a trial and the other rights I have just mentioned to you, that

16  there will be no trial, and that I will enter a judgment of

17  guilt and sentence you on the basis of your guilty plea after

18  consideration of a presentence report; do you understand that?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  If you plead guilty, do you understand

21  that you will also have to waive your right not to incriminate

22  yourself, because I will ask you questions about what you did

23  in order to satisfy myself that you are guilty as charged and

24  you will have to acknowledge your guilt; do you understand

25  that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Now that I mentioned your rights to you,

3  do you still wish to plead guilty?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Have you received a copy of the

6  Indictment naming you and have you discussed with your counsel

7  the charge in the Indictment to which you intend to plead

8  guilty?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  All right.  Do you understand, Mr.

11  Showers, that you are charged in Count One of the Indictment as

12  follows:  "In and around August of 2000 to on or about May 31,

13  2001, in the County of Erie, in the Western District of

14  Pennsylvania, the defendants, Billie Showers, Timothy Michael

15  Cox, Barbara Ann Anderson and others both known and unknown to

16  the grand jury, did knowingly, intentionally and unlawfully

17  conspire with each other to possess with the intent to

18  distribute and distribute 50 kilograms or more but less than

19  100 kilograms of a mixture and substance containing a

20  detectable amount of marijuana, a Schedule I controlled

21  substance, contrary to the provisions of Title 21, United

22  States Code, Sections 841(a)(1) and 841(b)(1)(C)."

23  Do you understand the charge, sir?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Now, as to Count One, in order for the


9


1  crime of conspiracy to possess with the intent to distribute

2  controlled substances to be established, the government must

3  prove all of the following essential elements beyond a

4  reasonable doubt.

5          One.  That two or more persons came to a mutual

6  understanding or agreement to try to accomplish a common and

7  unlawful plan to distribute the controlled substances charged

8  in the Indictment.

9          Two.  That the defendant knowingly and willfully

10  became a member of such conspiracy.

11          Three.  That marijuana is a Schedule I controlled

12  substance, pursuant to 21 U.S.C. Section 812(c), Schedule

13  I(c)(10).

14          Four.  That the conspiracy had the specific unlawful

15  purpose of distributing and possessing with the intent to

16  distribute 50 kilograms or more of marijuana.

17          Do you understand the elements of this crime?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Do you understand, sir, that the maximum

20  penalty for a violation of Count One is as follows:

21          A term of imprisonment of not more than 20 years;

22          A fine not to exceed $1 million;

23          A term of supervised release of at least three

24  years.

25          For a second or subsequent narcotic drug controlled


                              10


1  substance felony conviction that is final, whether federal,

2  state or foreign:

3          A term of imprisonment of not more than 30 years;

4          A fine not to exceed $2 million;

5          A term of supervised release of at least six years.

6          As well as a mandatory special assessment of $100.

7          Do you understand the maximum penalties for a

8  violation of Count One?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Has anybody made any threat to you or to

11  anyone else that has forced you in any way to plead guilty?

12         THE DEFENDANT:  No, sir.

13         THE COURT:  Mr. Piccinini, is there a plea agreement

14  in this case?

15         MR. PICCININI:  There is, your Honor.  I have marked

16  it as Government Exhibit 1 for identification, and the document

17  has already been provided to counsel previously and here in

18  court today both Mr. Showers and Mr. Cauley have signed the

19  document.

20         The significant terms of the plea letter would

21  include the defendant's intention to plead guilty at paragraph

22  A1 to Count One charging him with conspiracy.

23         Paragraph A2 sets forth his acceptance of

24  responsibility for the conduct alleged in Count Two of the

25  Indictment.


11


1          Paragraph B4 sets forth a three-level reduction

2  request by the government for acceptance of responsibility.

3          Paragraph C1 sets forth the maximum penalties as the

4   court explained here today.

5          And paragraph C2 sets forth the parties' stipulation

6   to the relevant conduct and the quantity involved in this

7   conspiracy being more than 100 kilograms but less than 400

8   kilograms of marijuana.

9          That would be the significant terms of the plea

10  letter, and I would request the admission into evidence of

11  Government Exhibit 1.

12          THE COURT:  All right, it's admitted.  Mr. Cauley,

13  has your client had an opportunity to read and review the

14  written plea agreement?

15          MR. CAULEY:  Yes, your Honor.

16          THE COURT:  Has it been signed by your client?

17          MR. CAULEY:  It has, sir.

18          THE COURT:  It has been signed today?

19          MR. CAULEY:  Yes, your Honor.

20          THE COURT:  Mr. Showers, let me ask you, prior to

21  signing the agreement, did you have an adequate opportunity to

22  read and review the plea agreement?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Did you understand its terms and

25  conditions?

12

1       THE DEFENDANT:  Yes, sir.

2       THE COURT:  And then you signed the plea agreement

3  and dated it, is that correct?

4       THE DEFENDANT:  Yes, sir.

5       THE COURT:  And do you understand that by signing

6  the plea agreement, you are thereby attesting to the fact that

7  you completely agreed with all of the terms and conditions?

8       THE DEFENDANT:  Yes, sir.

9       THE COURT:  If I didn't already admit it, it's

10  admitted.

11       MR. PICCININI:  Thank you, your Honor.

12       THE COURT:  All right.  Has anybody made any

13  promise, other than the plea agreement, that has caused you to

14  plead guilty?

15       THE DEFENDANT:  No, sir.

16       (Discussion held off the record between Defense

17  Counsel and the Defendant.)

18       THE COURT:  Mr. Cauley.

19      MR. CAULEY:  Your Honor, we talked about the fact

20   he's been cooperating with the authorities, that is part of the

21   understanding that is also referenced with the plea agreement.

22      THE COURT:  In other words, there is a provision in

23   the plea agreement that holds out the potential for reduction

24   based upon substantial assistance?

25      MR. PICCININI:  There is, your Honor.


13


1      MR. CAULEY:  Yes, sir.

2      THE COURT:  That is part of the plea agreement.

3   Beyond the plea agreement, has anybody made any promise?

4      THE DEFENDANT:  No, sir.

5      THE COURT:  All right.  Do you understand that the

6   court is not required to accept the plea agreement that you

7   have entered into and may reject it.  If the plea agreement is

8   rejected, you would be advised in open court and you would have

9   the opportunity to withdraw your guilty plea.  If the plea

10   agreement is rejected, you may nevertheless continue your plea

11   of guilty, and if you persist in your guilty plea after the

12   plea agreement is rejected, your sentence or the disposition of

13  your case may be less favorable to you than that proposed in

14  the plea agreement.  Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  And do you understand that the offense

17  to which you are pleading guilty today is a felony offense, and

18  that if your plea is accepted, you will be adjudged guilty of

19  that offense and that such adjudication may deprive you of

20  valuable civil rights, such as right the vote, the right to

21  hold public office, the right to serve on a jury and the right

22  to possess any kind of firearm.  Do you understand that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Under the Sentencing Reform Act of 1984,

25  the United States Sentencing Commission has issued guidelines

14

1  for judges to follow in determining sentences in criminal cases

2  for offenses occurring after November 1, 1987.  Have you and

3  your attorney talked about how the Sentencing Guidelines might

4  apply to your case?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And do you understand that I will not be

7   able to determine the guideline sentence for your case until

8   after the presentence report has been completed and you and the

9   government have had the opportunity to challenge the facts

10  reported by the United States probation officer?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  And do you understand that after it has

13  been determined what guideline sentence applies to a case, that

14  the judge has the authority, in some circumstances, to impose a

15  sentence that is more severe or less severe than that which is

16  called for by the guidelines?

17        THE DEFENDANT:  Yes, sir.

18        THE COURT:  Do you understand that under certain

19  circumstances you or the government may have the right to

20  appeal any sentence that is imposed?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  And do you understand, sir, that parole

23  has been abolished, and that if you are sentenced to a term of

24  imprisonment, you will not be released on parole?

25        THE DEFENDANT:  Yes, sir.

15

1          THE COURT:  Do you understand that if the sentence

2   is more severe than you expected, you will still be bound by

3   your guilty plea and you will have no right to withdraw it?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Except for your discussions with Mr.

6   Cauley about the Sentencing Guidelines, has anyone made any

7   prediction or promise to you about what your sentence will

8   be -- except for Mr. Cauley?

9          THE DEFENDANT:  No, sir.

10          (Discussion held off the record between Defense

11   Counsel and the Defendant.)

12          MR. CAULEY:  Why don't you explain that to the

13   judge?

14          THE DEFENDANT:  When I was apprehended by Officer

15   Jeff Greene, which he is an officer, he told me that well,

16   basically, he told me if I work with the government, it could

17   be a lot less severe than it was.  He had made a reference to

18   somewhere in between two years and six months, depending on how

19   much I give the government.  Basically, I'm thinking that's in

20   the provisions of the document that you guys already prepared

21   for me, am I correct in saying that?

22        THE COURT:  I'm not sure if it is or not.

23        MR. PICCININI:  No, there's certainly not any

24  mention of the amount of time that's been thrown out as a

25  possibility.  I just want to make sure before we leave here


16


1  today that it's clear to Mr. Showers that the Sentencing

2  Guidelines will apply to his case.  As I indicated, the

3  cooperation language is in the plea agreement, if there is

4  substantial assistance, there may be a motion.  But none of

5  that is binding on the government or on the court.

6        THE COURT:  Let me do this just as a precautionary

7  matter.  Do you understand, sir, that anything Officer Greene

8  may have told you by way of prediction about what your sentence

9  might be, is completely nonbinding on me; do you understand

10  that?

11        THE DEFENDANT:  Okay.  I just wanted to make sure.

12        THE COURT:  Do you understand that?

13        THE DEFENDANT:  Yes, sir.

14        THE COURT:  And do I also have it correct that you

15  are entering this guilty plea solely on the basis of the plea

16  agreement that you've entered into with the government and on

17  the advice of your counsel, and that anything that Officer

18  Greene may have said to you did not influence you and is not

19  influencing you in any way in your decision to plead guilty, is

20  that correct?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  All right.

23        MR. CAULEY:  Judge, if I may just follow up briefly

24  on that.  Billie, with your permission, and you tell me if this

25  is wrong.  Judge, we discussed this in the course of our


17


1  discussions, and the fact Jeff Greene had had some

2  conversations with him.  And I did explain to you that, that

3  may have been what he was hopeful for you to get if you were

4  willing to cooperate, but that it would be understood that

5  nobody would know what the sentence would be until the words

6  came out of the judge's mouth after he saw what the guidelines

7  were, what the prior record was, what the level of cooperation

8  was, if any, and what he decided?

9        THE DEFENDANT:  Right.

10          THE COURT:  Nobody else could bind him.  We had that

11   discussion, is that correct?

12          THE DEFENDANT:  Yes, sir.

13          MR. CAULEY:  I just wanted to make sure that the

14   court was aware that was an issue we had addressed.

15          THE COURT:  All right, I appreciate that.

16          MR. CAULEY:  But I think out of an abundance of

17   caution Mr. Showers wanted to be on the table with the court

18   about everything.

19          THE COURT:  All right, I appreciate that with

20   respect to both the revelation and your discussion of it, Mr.

21   Cauley.  Has anything that I have said here today, Mr. Showers,

22   suggested to you what your actual sentence in this case is

23   going to be?

24          THE DEFENDANT:  One more time, I'm sorry, your

25   Honor.


                                18


1          THE COURT:  That's all right.  Did I say anything to

2   you so far today which suggested to you or put in your mind

3   what I'm actually going to sentence you to?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  All right.  Have you been instructed by

6   your counsel, by government counsel, or by anybody else to

7   respond untruthfully to any question about a promised sentence?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Mr. Showers, did you, as charged in

10   Count One and as previously read to you by me, commit the

11   offense as charged?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Mr. Piccinini, what would be the

14   government's proof in this case?

15          MR. PICCININI:  Your Honor, if this matter proceeded

16   to trial, the government would provide testimony from Special

17   Agents Shawn VanSlyke and Frankland M. Gorham of the Erie Area

18   Gang Law Enforcement Task Force and the FBI, as well as other

19   members of that task force, which will establish that from

20   August of 2000 through May of 2001, the defendant conspired

21   with Tim Cox, Barb Anderson and others, to distribute marijuana

22   in and around the Erie area.

23          The evidence would show, first of all, your Honor,

24   the use of rental cars by Mr. Showers and others, exceeding

25   63,000 miles worth of rental car usage, including more than

19

1  $19,000 worth of rental car fees.  Those rental cars being

2  utilized to travel from the Erie area to Chicago for purposes

3  of picking up the marijuana.

4       The testimony would include confidential informant

5  testimony.  Indicating on May 30, 2001, Showers had traveled

6  with Ms. Anderson and others to Chicago for the purpose of

7  picking up marijuana.  Surveillance was then conducted on

8  Interstate 90, and the testimony would show that his vehicle

9  was stopped and subsequently searched pursuant to a federal

10  search warrant, netting approximately 20 pounds of marijuana,

11  which was contained in 20 separate Ziploc bags.  Which were

12  then enclosed within a black garbage bag.

13       In addition, Mr. Showers had in his possession

14  $1,344, and Ms. Anderson had $232 and some change, which was

15  money which she was paid by partaking in this trip by Mr.

16  Showers.

17       In addition, the evidence would include testimony

18  from a Forensic Scientist from the Pennsylvania State Police

19  Crime Laboratory, indicating that the marijuana or the

20 substance contained within the vehicle weighed nine kilograms

21 or 19.8 pounds and did contain marijuana.

22          In addition, the testimony would show that a

23 controlled delivery of that marijuana took place from Mr.

24 Showers to the co-conspirator, Timothy Cox.

25          Mr. Showers was interviewed and admitted that he had

20

1 obtained this marijuana from his source in Chicago, and

2 admitted that he was Cox's supplier of marijuana.

3          In addition, he indicated that he had supplied Mr.

4 Cox with three pounds a week, increasing to 20 pounds a week

5 since the summer of the year 2000.  On this occasion Mr. Cox

6 had paid $17,000 for the marijuana.  That $17,000 was seized as

7 well.  Mr. Showers also admitted that he would make $4,000

8 profit on those sales of marijuana from Mr. Cox.

9          In addition, the relevant quantity and the relevant

10 conduct satisfying the quantity in this case would be

11 consistent with the stipulation that's part of the plea letter

12 of being more than 100 kilograms but less than 400 kilograms of

13 marijuana.

14          That would be the nature of the government's proof,

15   your Honor.

16          THE COURT:  Mr. Showers, do you agree with

17   everything that Mr. Piccinini just said?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Do you still wish to plead guilty?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Mr. Cauley, is it your advice that your

22   client plead guilty?

23          MR. CAULEY:  Under the circumstances of this case,

24   your Honor, I believe it's in his best interests and I've

25   advised him of that.


                                   21


1          THE COURT:  All right.  Mr. Showers, because you

2   acknowledge that you are in fact guilty as charged in Count One

3   and because you know about your right to a trial, and because

4   you know what the maximum possible penalty in the case is, and

5   because you are voluntarily pleading guilty, I will accept your

6   guilty plea and enter a judgment of guilty on your plea to

7   Count One of Indictment No. 01-22 Erie.

8          It is therefore the finding of the court in the case

9    of United States versus Billie Showers, that this defendant is

10   fully competent and capable of entering an informed plea, and

11   that his plea of guilty is a knowing and voluntary plea

12   supported by an independent basis in fact containing each of

13   the essential elements thereof and, therefore, the plea is

14   accepted and the defendant is now adjudged guilty of the charge

15   contained in Count One.

16          Would you please have the defendant and his counsel

17   sign the change of plea.

18          (Whereupon, the Change of Plea was executed by the

19   Defendant and Defense Counsel.)

20          MR. CAULEY:  The record should reflect that my

21   client signed Bill Showers and I've had him sign Billie Showers

22   as well.

23          THE COURT:  What do you go by?

24          THE DEFENDANT:  Bill, my real name is Billie.

25          THE COURT:  All right.


                                22


1          MR. CAULEY:  I had him do it both ways.

2          THE COURT:  Mr. Showers, a presentence report is

3   going to be prepared by the probation office, and it will be in

4   your best interests to cooperate with the probation officer in

5   furnishing information for that report because that report will

6   be important in my decision about what your sentence in this

7   case will be.

8          The disposition of sentencing in this case is set

9   for January 8, 2002, at 9:00 a.m., in this courtroom.

10          Mr. Piccinini, does the government have any

11   objection to the continued status of this defendant pending

12   sentencing?

13          MR. PICCININI:  No, your Honor.

14          THE COURT:  Anything further, Mr. Cauley?

15          MR. CAULEY:  I don't believe so, your Honor, thank

16   you very much.

17          THE COURT:  All right, we're in recess.

18

19          (Whereupon, at 10:15 a.m., the Change of Plea

20   proceedings concluded.)

21

22                    - - -

23

24

25

23

1          C E R T I F I C A T E

2

3

4

5     I, Ronald J. Bench, certify that the foregoing is a

6   correct transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11

12   _____

13   Ronald J. Bench

14

15

16

17

18

19

20

21

22

23

24

25